# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERALD LEE MILLER,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CORRECTIONAL OFFICER J. NAVARRO, et al.,<br><br>　　　　Defendants. | Case No. 1:17-cv-01309-DAD-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSING CERTAIN CLAIMS AND DEFENDANTS FOR FAILURE TO STATE A CLAIM AND IMPROPERLY JOINED UNDER THE FEDERAL RULES OF CIVIL PROCEDURE AND SEVERING ACTION<br><br>(ECF No. 1)<br><br>OBJECTIONS DUE WITHIN THIRTY DAYS |

Plaintiff Gerald Lee Miller, a state prisoner, is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Currently before the Court is the complaint, filed October 2, 2017.

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or

that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## COMPLAINT ALLEGATIONS

Plaintiff is in the custody of the California Department of Corrections and Rehabilitation and is currently incarcerated at Centinela State Prison. The incidents alleged in the complaint occurred while Plaintiff was housed at California State Prison Corcoran.

Plaintiff alleges that on February 6, 2017, he was set up to be assaulted by correctional officers. (Compl. 6,[1] ECF No. 1.) Plaintiff was walking from education on A-Yard to the general population. (Compl. 6.) As Plaintiff passed through the security gate, he heard several

---
[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

2

correctional officers, including Correctional Officer Navarro, laughing and telling jokes with inmate Robert Taylor. (Compl. 6.) Plaintiff heard these officers telling inmate Taylor that Plaintiff could not even read; could not lead himself out of a wet paper bag; is working with the Attorney General's Office to train the new Attorney General; was responsible for all inmates getting their cells searched and their phones taken; and if he wants to keep his phone he knows what he needs to do. (Compl. 6.) Plaintiff did not pay attention to this because he was trying to stay focused on getting his GED. (Compl. 6.)

Minutes later, inmate Taylor repeated this conversation to three other inmates who assaulted Plaintiff. (Compl. 7.) Correctional Officer Navarro was the first to arrive in response to the assault and took Plaintiff off the yard. (Compl. 7.) Correctional Officer Navarro told Plaintiff that he had picked Plaintiff up so fast it was as if the assault had never happened. (Compl. 7.) Correctional Officer Navarro also made comments implying that he was showing the new Attorney General what happens in prison. (Compl. 7.) Plaintiff contends that Correctional Officer Navarro and the other officers should have known that telling inmates that he was responsible for the cell search and their phones being confiscated would result in Plaintiff being in danger. (Compl. 7.) Plaintiff received a fractured right eye and his surgical jaw repair was reinjured when he was assaulted by the inmates. (Compl. 7.)

Due to the incident, Plaintiff was placed in administrative segregation. (Compl. 14.) When Plaintiff was placed in Administrative Segregation, Correctional Officers Torress, Cagle, and Medina took his legal and other books and personal property which are worth over one thousand dollars in retaliation for Plaintiff filing a prior civil suit. (Compl. 8.) Plaintiff contends that Correctional Officers Torres and Cagle were working together with Correctional Officer Medina to take his property. (Compl. 8.)

On February 6, 2017, Correctional Officers Torress and Cagle packed Plaintiff's personal property for administrative segregation. (Compl. 8.) Plaintiff received his property and an unsigned 1083 form on February 27, 2017. (Compl. 8.) Plaintiff asked Correctional Officer Medina if there was another inventory sheet because a lot of his new legal books, new personal books, and other personal property were not listed on the inventory sheet he received. (Compl.

8.) Correctional Officer Medina told Plaintiff that he did not own any new books or new personal books, and there was none in his property. (Compl. 9.) Plaintiff asked Correctional Officer Medina for his personal letters so he could provide receipts for the missing property. (Compl. 9.) Correctional Officer Medina told Plaintiff that there were no personal letters in his property. (Compl 9.)

Plaintiff told Correctional Officer Medina that either Correctional Officers Cagle or Torress did not pack his person property or she took his property and was trying to cover it up by not giving him his receipts. (Compl. 9.) Correctional Officer Medina told Plaintiff that he did not own such property and walked off. (Compl. 9.) Plaintiff alleges that Correctional Officers Medina, Cagle, and Torress are part of a "green-wall culture in administrative segregation" and violated due process by deliberately withholding his personal property and not providing him with receipts. (Compl. 9.)

Plaintiff alleges that administrative segregation has a custom and practice of throwing away inmate mail and he has been denied mail from his family and friends for six months in retaliation for filing a prior civil suit. (Compl. 10.) On March 15, 2017, Plaintiff explained to Correctional Officer Marquez that the letters Plaintiff was putting in the mail, was not being mailed because Plaintiff was no longer receiving mail from his children, family, or friends. (Compl. 10.) Plaintiff asked Correctional Officer Marquez about a February 12, 2017 and a February 27, 2017 letter that Plaintiff had given to Correctional Officer Marquez to be mailed. (Compl. 10.) Plaintiff had not received any response and it is not like Plaintiff's family not to write and respond to his letters as they send him money every month and he had not had the letters returned. (Compl. 10.) Plaintiff told Correctional Officer Marquez that his mail was being withheld by Marquez and Plaintiff was going to file a grievance against him for withholding his mail. (Compl. 11.) Correctional Officer Marquez told Plaintiff to go ahead because he still was not going to get any of his mail and walked off. (Compl. 11.)

The next day, March 16, 2017, Plaintiff gave Correctional Officer Florse his mail to be sent out and informed Florse that he believed that Correctional Officer Marquez was withholding his mail. (Compl. 11.) Correctional Officer Florse told Plaintiff that it was not his problem and

walked away with Plaintiff's mail and an inmate request form about the mail. (Compl. 11.)

Plaintiff filed an inmate appeal against Correctional Officers Florse and Marquez for withholding his mail. (Compl. 11.) A few days later, Correctional Officer Florse came to Plaintiff's cell and removed all his inmate appeals forms with his name on them. (Compl. 11.) Plaintiff alleges that after this Correctional Officer Florse started a retaliatory assault on Plaintiff. (Compl 11.) Correctional Officer Florse would beat on Plaintiff's cell door every thirty minutes to an hour with his security count stick. (Compl. 11.) On shower days, Correctional Officer Florse would try to provoke Plaintiff to fight with him while escorting Plaintiff to the shower. (Compl. 11.)

Plaintiff started a mail log sheet because he was still being denied his mail. (Comp. 11.) On April 18, 2017, Plaintiff gave Correctional Officer Xayoudom two letters to be mailed to his family and recorded them on his mail log. (Compl. 11.) Plaintiff filled out an inmate request form which he sent to the mailroom asking if there were any holds on his mail. (Compl. 11.) Plaintiff received a response that there were no holds on his mail. (Compl. 11.)

On May 15, 2017, while being escorted to the exercise yard, Correctional Officer Gonzalves told Plaintiff that the reason he was not getting his mail was because he and his family were being investigated by the institutional security unit for bringing drugs and phones into the prison. (Compl. 13.) Plaintiff's son works for Apple Phone Company and his mother is an ex-correctional officer and a retired federal agent. (Compl. 13.) Plaintiff filed a complaint directly with the institutional security unit on July 22, 2017. (Compl 13.)

On July 22, 2017, Plaintiff was transferred out of the SHU and spoke with a family member who informed him that they had been so worried about him that they called Corcoran to check on him because all their letters were being returned to them. (Compl. 11.) Plaintiff was informed that his sister had only been given one day to live because she was very sick and they needed Plaintiff's advice. (Compl. 11.) On or around July 22, 2017, Correctional Officer Xayoudom told Plaintiff that it is an underground practice and proceed to send inmate mail to the institutional security unit to be read and investigated and this correspondence is not mailed, but is kept and it could be institutional security who is not giving him his mail or mailing his

correspondence to his family. (Compl. 12.)

On this same day, the institutional security unit came to speak with Plaintiff about his complaint and told him that they were not investigating him or his family. (Compl. 13.) Plaintiff was told that he needed to file a complaint against Correctional Officer Gonzalves for the fake investigation that was done by Correctional Officer Gonzalves. (Compl. 13.)

On July 28, 2017, Plaintiff filed a citizen's complaint against Correctional Officer Gonzalves for abuse of power and position and a complaint with internal affairs for the same conduct. (Compl. 13.) Plaintiff contends that he and his family were used as a target for retaliation by Corcoran security housing unit officers who have been fired or investigated by the federal courts due to inmate complaints. (Compl. 13.) Plaintiff states that Correctional Officer Gonzalves placed his family into an ongoing investigation that had nothing to do with Plaintiff or his family and did so only for his personal gratification. (Compl. 13.)

Plaintiff alleges that when he was placed in administrative segregation on February 6, 2017, he was not provided with a 114 D lock-up order until May 27, 2017, in response to an inmate appeal. (Compl. 14.) He did not receive an initial administrative segregation hearing until March 27, 2017, almost 60 days after he was placed in administrative segregation. (Compl. 14.) Plaintiff contends that he was required to stay in administrative segregation longer than he should have due to this although a medical hold was placed on him. (Compl. 14.)

Plaintiff states that the new attorney general was being trained at the time of these actions and these are the same claims that have already been litigated once before and he needs an in camera review of the correspondence that the attorney general had with the prison. (Compl. 14.) Plaintiff states that this confidential information from Gerald Lee Miller v. McEwen, no. 11-cv-2333-JLS-WVG, is still affecting him today. (Compl. 14.) Plaintiff alleges that these are the same claims that he won and settled in Gerald Lee Miller v. O. Rufino, no. 08-cv-01233 BRM(WMC) and Gerald Lee Miller v. Jane Woodford no. 2:07-cv-01646-LKK-EFB. (Compl. 15.)

Plaintiff brings this action against Correctional Officers Navarro, Torress, Cagle, Medina, Florse, Marquez, Xayoudom, and Gonzalves seeking a declaration that his rights were violated,

injunctive relief, and monetary damages. (Compl. 17.)

## III.

## DISCUSSION

### A. Eighth Amendment

Plaintiff brings his first cause of action against Correctional Officer Navarro for failing to protect him in violation of the Eighth Amendment. The Eighth Amendment's prohibition against cruel and unusual punishment protects convicted prisoners. Bell v. Wolfish, 441 U.S. 520, 535 (1979); Graham v. Connor, 490 U.S. 386, 395 n.10 (1989). Although prison conditions may be restrictive and harsh, prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (quotation marks omitted).

Prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners because being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society. Farmer v. Brennan, 511 U.S. 825, 833-34 (1994) (quotation marks omitted); Cortez v. Skol, 776 F.3d 1046, 1050 (9th Cir. 2015); Clem v. Lomeli, 566 F.3d 1177, 1181 (9th Cir. 2009); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). However, prison officials are liable under the Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to an inmate; and it is well settled that deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm. Farmer, 511 U.S. at 834, 841 (quotations omitted); Clem, 566 F.3d at 1181; Hearns, 413 F.3d at 1040.

Here, the allegation that Correctional Officer Navarro told other inmates that Plaintiff was responsible for the cell search and confiscation of inmate cell phones can be reasonably construed as placing Plaintiff at a substantial risk of harm from other inmates. See Arredondo v. Drager, No. 14-CV-04687-HSG, 2016 WL 3755958, at *12 (N.D. Cal. July 14, 2016)

1 (transferring an inmate to a housing unit known to be for snitches and informants which would
2 subject the inmate to assault from other inmates); Lyons v. Dicus, 663 F. App'x 498, 500 (9th
3 Cir. 2016) (labeling inmate snitch). The allegations in the complaint are sufficient to state a
4 cognizable claim against Correctional Officer Navarro for deliberate indifference in violation of
5 the Eighth Amendment.

**B. Due Process**

1. Deprivation of Property

Plaintiff alleges that Correctional Officers Torress, Medina, and Cagle did not follow any prison rule or procedure when they took his personal and legal property. (Compl. 9.) The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake. Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (quotation marks omitted). The Due Process Clause is not violated by the random, unauthorized deprivation of property so long as the state provides an adequate post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517, 533 (1984); Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994). In this instance, Plaintiff has alleged an unauthorized deprivation of his personal and legal property, and Plaintiff has an adequate post-deprivation remedy under California law. Therefore, Plaintiff may not pursue a due process claim arising out of the unlawful confiscation of his personal property. Barnett, 31 F.3d at 816-17 (citing Cal. Gov't Code §§ 810-895).

Plaintiff fails to state a due process claim based on the loss of his personal property.

2. Administrative Segregation

Plaintiff also alleges that he was placed in administrative segregation without receiving the process required under the Fourteenth Amendment. The Due Process Clause does not create a liberty interest in remaining in the general population or being free from administrative segregation. Hewitt v. Helms, 459 U.S. 460, 466-67 (1983); Toussaint v. McCarthy, 801 F.2d 1080, 1091 (9th Cir. 1985), abrogated in part on other grounds by Sandin v. Conner, 515 U.S. 472 (1995). Administrative segregation is the type of confinement that should be reasonably anticipated by inmates at some point in their incarceration. Toussaint, 801 F.2d at 1091 (quoting

Hewitt, 459 U.S. at 468). However, a state may a create liberty interest which would be protected by the Due Process Clause. Sandin, 515 U.S. at 483-84. A prisoner has a liberty interest protected by the Due Process Clause only where the restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Keenan v. Hall, 83 F.3d 1083, 1088 (9th Cir. 1996) (quoting Sandin, 515 U.S. at 484).

The Ninth Circuit has concluded that prisoners have no liberty interest in remaining free from administrative segregation or solitary confinement. See May v. Baldwin, 109 F.3d 557, 565 (9th Cir.1997). Plaintiff alleges that he was not provided the procedure required by 15 C.C.R. §§ 3335 and 3337. (Compl. 14.) However, in Toussaint, the Ninth Circuit held that California's prison regulations which govern the removal and segregation decision, do not create a liberty interest. Toussaint, 801 F.2d at 1097-98. Such regulations are procedural requirements that, even if mandatory, do not raise a constitutionally cognizable liberty interest. Id. at 1098.

Plaintiff's complaint does not contain any factual allegations to demonstrate that the conditions he was subjected to while he was housed in administrative segregation imposed an atypical or significant hardship on him in relation to the ordinary incidents of prison life. Plaintiff's complaint fails to demonstrate that he had a liberty interest in freedom from administrative segregation, and therefore, does not state a due process claim.

**C.    Deprivation of Mail**

Plaintiff alleges that he was deprived of mail for six months while he was housed in administrative segregation in violation of the Due Process Clause. An inmate has a right under the First Amendment to send and receive mail. Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995). There is also a liberty interest in communication by mail that is protected by the Due Process Clause. Procunier v. Martinez, 416 U.S. 396, 418 (1974), overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401 (1989)). While an inmate has a due process liberty interest in receiving notice that his mail is being withheld, Prison Legal News v. Lehman, 397 F.3d 692, 701 (9th Cir. 2005); Sorrels v. McKee, 290 F.3d 965, 971 (9th Cir. 2002), only where the failure to notify is pursuant to prison policy would a due process claim arise, Sorrels, 290 F.3d at 972.

First, Plaintiff alleges that he asked Correctional Officer Marquez about letters that

Plaintiff gave him to mail out because he had not a response from his family. Plaintiff accused Correctional Officer Marquez of withholding his mail and stated that he was going to file a grievance against him. Correctional Officer Marquez responded for Plaintiff to go ahead and file a grievance because he was still not going to get his mail. The following day, Plaintiff gave Correctional Officer Florse some letters to be mailed. Plaintiff complained that he thought Correctional Officer Marquez was withholding his mail and Correctional Officer Florse responded that it was not his problem and walked away.

Plaintiff gave Correctional Officer Xayoudom some letters to be mailed to his family. Sometime later Correctional Officer Xayoudom told Plaintiff that letters are sent to Institutional Security to be read and investigated and it could be Institutional Security that was keeping his mail. Plaintiff contends that this "underground policy" violates his due process rights. However, prison officials may examine a prisoner's mail without infringing upon his constitutional rights. United States v. Wilson, 447 F.2d 1, 8 n.4 (9th Cir. 1971).

Further, although Plaintiff had been told by Correctional Officer Gonzalves that his family was being investigated for bringing drugs and phones into the prison and that was why he was not getting mail, in response to an inmate complaint, Institutional Security told him that they were not investigating him and his family and were not withholding his mail. Finally, although Plaintiff alleges that his family told him that the letters they were sending to him were returned to them, he does not link any named defendant to his mail being returned. To state a claim, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones, 297 F.3d at 934.

Plaintiff alleges no facts by which the Court can reasonably infer that Correctional Officers Marquez, Florse, Xayoudom, or Gonzalves were denying Plaintiff of his right to send or receive mail.

**D.    Retaliation**

Plaintiff also contends that Correctional Officers Torress, Cagle, and Medina took his property, Correctional Officer Medina refused to return his receipts, he was denied his mail, and Correctional Officer Gonzalves told him that he and his family were being investigated for

1 bringing drugs and phones into the prison in retaliation for his filing civil rights actions. Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). Also protected by the First Amendment is the right to pursue civil rights litigation in federal court without retaliation. Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Plaintiff's allegation that, a few days after Plaintiff filed an inmate appeal against him, Correctional Officer Florse came to his cell and removed all grievances with Florse's name on them. Thereafter, Correctional Officer Florse began beating on Plaintiff's cell every half hour to hour with his security stick. This is sufficient to state cognizable retaliation claim against Correctional Officer Florse.

Although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Iqbal, 556 U.S. at 678-79. To state a cognizable retaliation claim, Plaintiff must establish a nexus between the retaliatory act and the protected activity. Grenning v. Klemme, 34 F. Supp.3d 1144, 1153 (E.D. Wash. 2014). Plaintiff alleges that other correctional officers acted in retaliation for his filing lawsuits, but there are no allegations that any correctional officer was aware that Plaintiff had previously filed a lawsuit. Further, the complaint is devoid of any factual allegations by which the Court can reasonably infer that any correctional officer acted because Plaintiff filed a prior law suit. Plaintiff's conclusory allegations of retaliation are insufficient to state a cognizable claim against any other named defendant.

///
///

### E. Equitable Relief

#### 1. Declaratory Relief

Plaintiff seeks a declaration that the acts alleged in the complaint violated his federal rights. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985). In the event that this action reaches trial and the jury returns a verdict in favor of Plaintiff, that verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that any defendant violated Plaintiff's rights is unnecessary in this action and is subject to dismissal.

#### 2. Injunctive Relief

Plaintiff also seeks an order to remove all negative correspondence from the attorney general and the prison during the time he was litigating his prior lawsuit; send Plaintiff to a lower level prison where he would not have enemy concerns, for defendants not to be allowed to talk about this case on Facebook or the Internet; and for his mail rights to be restored.

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983) (citations omitted); Jones v. City of Los Angeles, 444 F.3d 1118, 1126 (9th Cir. 2006). "Abstract injury is not enough." Lyons, 461 U.S. at 101. "[P]laintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." Id. (internal quotations and citations omitted). "The key issue is whether the plaintiff is 'likely to suffer future injury.'" Jones, 444 F.3d at 1126 (quoting Lyons, 461 U.S. at 105). Furthermore, any award of equitable relief is governed by the Prison Litigation Reform Act, which provides in

relevant part, "Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A).

Plaintiff has stated a claim for deliberate indifference in violation of the Eighth Amendment based on the allegation that Correctional Officer Navarro made statements that placed Plaintiff at a significant risk of harm; and a claim against Correctional Officer Florse for retaliation. The relief Plaintiff seeks in this action would not remedy the conduct alleged and cannot be granted in this action. Further, Plaintiff's subsequent transfer out of California State Prison-Corcoran rendered moot his prayer for injunctive relief. See Preiser v. Newkirk, 422 U.S. 395, 402-03 (1975); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991). Plaintiff's request for injunctive relief should be dismissed as not cognizable in this action.

### F. Joinder

Finally, the Court finds that Plaintiff is attempting to bring claims in this action that are improperly joined. A basic lawsuit is a single claim against a single defendant. Federal Rule of Civil Procedure 18(a) allows a plaintiff to add multiple claims to the lawsuit when they are against the same defendant. Federal Rule of Civil Procedure 20(a)(2) allows a plaintiff to join multiple defendants to a lawsuit where the right to relief arises out of the same "transaction, occurrence, or series of transactions" and "any question of law or fact common to all defendants will arise in the action." However, unrelated claims that involve different defendants must be brought in separate lawsuits. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). This rule is not only intended to avoid confusion that arises out of bloated lawsuits, but also to ensure that prisoners pay the required filing fees for their lawsuits and prevent prisoners from circumventing the three strikes rule under the Prison Litigation Reform Act. 28 U.S.C. § 1915(g).

The claims brought in this action would result in the type of bloated lawsuit that was precluded in George. Under the federal rules, Plaintiff may state a single claim against a single

defendant. Plaintiff may then add any additional claims to his action that are against the same defendant under Rule 18. Fed. R. Civ. P. 18. Plaintiff may also add any additional claims against other defendants if those claims arise from the same transaction, occurrence, or series of transactions as his original claim. Fed. R. Civ. P. 20(a)(2).

Here, Plaintiff alleges that Correctional Officer Navarro made comments about him to other inmates that resulted in him being attacked. However, Plaintiff's claims regarding the handling of his property or mail, retaliation by other correctional officers, and subsequent placement in administrative segregation do not arise out of the same transaction or occurrence and do not contain questions of law or fact that are common to the claim against Officer Navarro.[2] The Court finds that the claims are improperly joined and cannot proceed in the same lawsuit.

Accordingly, it is recommended that this action proceed on Plaintiff's claim against Correctional Officer Navarro and all remaining claims be dismissed from this action.

## IV.

## CONCLUSION AND RECOMMENDATIONS

Plaintiff's complaint states a cognizable claim against Correctional Officer Navarro for deliberate indifference in violation of the Eighth Amendment, but fails to state any other cognizable claims that are properly joined in this action. Further, the additional claims that Plaintiff is seeking to bring in this action are improperly joined under the Federal Rules of Civil Procedure. Therefore, the Court finds that it would be futile to allow Plaintiff leave to amend his complaint in this action.

Accordingly, it is HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's claim for damages against Correctional Officer Navarro for deliberate indifference in violation of the Eighth Amendment;
2. The retaliation claim against Correctional Officer Florse be severed from this action and Plaintiff be granted leave to file an amended complaint in the new

---

[2] The Court shall address the claim against Correctional Officer Florse by separate order.

14

|   |   |
|---|---|
| 1 | case; |
| 2 | 3. All other claims be dismissed from this action for failure to state a cognizable |
| 3 | claim; and |
| 4 | 4. Correctional Officers C. Torress, Cagle, Medina, Florse, Marquez, Xayoudom, |
| 5 | and Gonzalves be dismissed from this action for Plaintiff's failure to state a |
| 6 | cognizable claim. |

This findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with this findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **November 28, 2017**

UNITED STATES MAGISTRATE JUDGE