# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERALD LEE MILLER,<br><br>    Plaintiff,<br><br>v.<br><br>CORRECTIONAL OFFICER J. NAVARRO, et al.,<br><br>    Defendants. | Case No. 1:17-cv-01309-DAD-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS<br>[ECF Nos. 15, 16]<br><br>**FOURTEEN (14) DAY DEADLINE** |

Plaintiff Gerald Lee Miller, a state prisoner, is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

On February 1, 2018, Plaintiff filed a second amended complaint. (ECF No. 15.) On March 16, 2018, the Court screened Plaintiff's second amended complaint and found that it states a cognizable claim against Correctional Officer Navarro for deliberate indifference in violation of the Eighth Amendment and retaliation in violation of the First Amendment; and retaliation claims against Correctional Officers Florse, Marquez, and Xayoudom, but fails to state a cognizable claim against any other named defendant in this action. (ECF No. 16.) Further, the Court found that the claims that Plaintiff is seeking to bring in this action are improperly joined under the Federal Rules of Civil Procedure. Therefore, the Court granted Plaintiff fourteen (14) days to notify the Court in writing which claim he seeks to proceed upon in this action. (Id.)

On April 6, 2018, Plaintiff notified the Court that he wishes to proceed only on his claim for retaliation in violation of the First Amendment against Correctional Officers Florse,

Marquez, and Xayoudom. (ECF No. 17.) As a result, the Court will recommend that this action only proceed on those claims, and all other claims and defendants be dismissed for the reasons explained below.

## I.

## SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

///

## II.

## SECOND AMENDED COMPLAINT ALLEGATIONS

Plaintiff is in the custody of the California Department of Corrections and Rehabilitation ("CDCR") and is currently incarcerated at Centinela State Prison. The incidents alleged in the complaint occurred while Plaintiff was housed at California State Prison Corcoran ("Corcoran"). Plaintiff alleges that on February 6, 2017, he was set up to be assaulted by correctional officers. (Sec. Am. Compl. ("SAC") 6,[1] ECF No. 1.)

On or about February 6, 2017, which was someone's first day in the building, floor staff Torress and Cagle came to Plaintiff's cell and asked him to come out so Correctional Officer Cagle's program could be explained to all inmates in the building. (SAC 8.) Plaintiff told them that he did not have time to do this because he was GED testing and did not have time to be running around. (SAC 8.) Correctional Officer Cagle asked Plaintiff to do him this favor and Plaintiff agreed. (SAC 8.) After the program was explained, Plaintiff left for school. (SAC 8.) Plaintiff contends that Correctional Officers Cagle and Torress were mad at Plaintiff for initially refusing to help Cagle. (SAC 8.)

After leaving the Education Department, Plaintiff was walking from education on A-Yard to the general population. (Compl. 6, 9.) As Plaintiff passed through the security gate, he heard several correctional officers, including Correctional Officer Navarro, laughing and telling jokes with inmate Robert Taylor. (SAC 6.) Plaintiff heard these officers telling inmate Taylor that Plaintiff could not even read; could not lead himself out of a wet paper bag; is working with the Attorney General's Office to train the new Attorney General; was responsible for all inmates getting their cells searched and their phones taken; and if he wants to keep his phone he knows what he needs to do. (SAC 6, 9.) Plaintiff did not pay attention to this because he was trying to stay focused on getting his GED. (SAC 6.)

A minute later, inmate Taylor repeated this conversation to three other inmates who assaulted Plaintiff. (SAC 6.) Correctional Officer Navarro was the first to arrive in response to

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

3

the assault and took Plaintiff off the yard. (SAC 6.) Correctional Officer Navarro told Plaintiff that he had picked Plaintiff up so fast and put his hat on his head so that it was as if the assault had never happened. (SAC 6.) Correctional Officer Navarro also made comments implying that he was showing the new Attorney General what happens in prison. (SAC 7.) Plaintiff contends that Correctional Officer Navarro and the other officers should have known that telling inmates that he was responsible for the cell search and their phones being confiscated would result in Plaintiff being in danger. (SAC 7.) Correctional Officer Navarro did not try to stop this assault before it happened or during the assault. (SAC 7.) Plaintiff received a fractured right eye and his surgical jaw repair was reinjured when he was assaulted by the inmates. (SAC 7.)

From 2013 to 2015, Correctional Officer Navarro and Correctional Officer Cagle were Plaintiff's floor staff when he was housed in another building. (SAC 7.) During this time, Plaintiff was litigating another civil action with another prison. (SAC 7.) On two occasions calls were placed to correctional staff asking why Plaintiff was not released in time to participate in a conference call with the court. (SAC 7.) Due to this, the A Yard second watch sergeant talked to Plaintiff's floor staff to ensure that Plaintiff and other inmates would be released on time for these types of matters. (SAC 7.) Plaintiff contends that Correctional Officers Navarro, Cagle, and Torress took adverse action against him due to these prior civil litigations and because they believed that he was working with the Attorney General's Office. (SAC 7.)

Correctional Officers Torress and Cagle packed Plaintiff's property for Administrative Segregation. (SAC 9.) They failed to follow CDCR rules, policy, and procedure in packing his property. (SAC 9.) They did not pack, sign, and date the property inventory sheet. (SAC 9.) Around February 27, 2017, Plaintiff received his property and an unsigned 1083 form from Correctional Officer Medina. (SAC 9.) Plaintiff found that a lot of his property was missing and not listed on the unsigned property sheet. (SAC 9.)

Plaintiff asked Correctional Officer Medina if there was another inventory sheet because a lot of his new legal books, new personal books, and other personal property were not listed on the inventory sheet he received. (SAC 9.) Correctional Officer Medina told Plaintiff that he did not own any new books or new personal books, and there was none in his property. (SAC 9.)

Plaintiff asked Correctional Officer Medina for his personal letters so he could provide receipts for the missing property. (SAC 10.) Correctional Officer Medina told Plaintiff that there were no personal letters in his property. (SAC 10.)

Plaintiff told Correctional Officer Medina that either Correctional Officers Cagle or Torress did not pack his person property or she took his property and was trying to cover it up by not giving him his receipts. (SAC 10.) Correctional Officer Medina told Plaintiff that he did not own such property and walked off. (SAC 10.)

Plaintiff alleges that Correctional Officers Medina, Cagle, and Torress are part of a "green-wall culture in administrative segregation" and violated due process by deliberately withholding his personal property and not providing him with receipts. (SAC 10.) Plaintiff alleges that Correctional Officers Medina, Cagle, and Torress took adverse action against him due to his involvement in prior civil actions because they believed he was working for the Attorney General. (SAC 10.) Plaintiff also contends that he has been denied a post deprivation remedy because his administrative appeal was not returned at the third level of review. (SAC 11.) Plaintiff alleges that Correctional Officers Medina, Cagle, and Torress gave his books and personal property to other inmates. (SAC 11.)

Plaintiff alleges that administrative segregation has a custom and practice of throwing away inmate mail and he has been denied mail from his family and friends for six months in retaliation for filing a prior civil suit. (SAC 11.) Around February 11, 2017, Plaintiff was moved to Administrative Segregation and was denied his personal mail for six months. (SAC 11.) Prior to March 15, 2017, Correctional Officers Marquez and Florse stopped by Plaintiff's cell and told him that they knew who he was and that he liked to file inmate appeals, grievances and law suits and that inmates who filed appeals in administrative segregation do not get any mail. (SAC 12.) On March 15, 2017, Plaintiff explained to Correctional Officer Marquez that the letters Plaintiff was putting in the mail were not being mailed because Plaintiff was no longer receiving mail from his children, family, or friends. (SAC 12.) Plaintiff asked Correctional Officer Marquez about a February 12, 2017 and a February 27, 2017 letter that Plaintiff had given to Correctional Officer Marquez to be mailed. (SAC 12.) Plaintiff had not received any response and it is not

like Plaintiff's family not to write and respond to his letters as they send him money every month and he had not had the letters returned. (SAC 12.) Plaintiff told Correctional Officer Marquez that his mail was being withheld by Marquez and Plaintiff was going to file a grievance against him for withholding his mail. (SAC 12.) Correctional Officer Marquez told Plaintiff to go ahead because he still was not going to get any of his mail and walked off. (SAC 12.)

The next day, March 16, 2017, Plaintiff gave Correctional Officer Florse his mail to be sent out and informed Florse that he believed that Correctional Officer Marquez was withholding his mail. (SAC 12.) Correctional Officer Florse told Plaintiff that it was not his problem and walked away with Plaintiff's mail and an inmate request form about the mail. (SAC 13.)

Plaintiff filed an inmate appeal against Correctional Officers Florse and Marquez for withholding his mail. (SAC 13.) A few days later, Correctional Officer Florse came to Plaintiff's cell and removed all his inmate appeals forms with his name on them. (SAC 13.) Plaintiff alleges that after this Correctional Officer Florse started a retaliatory assault on Plaintiff. (SAC 13.) Correctional Officer Florse would beat on Plaintiff's cell door every thirty minutes to an hour with his security count stick. (SAC 13.) On shower days, Correctional Officer Florse would try to provoke Plaintiff to fight with him while escorting Plaintiff to the shower by pulling on him really hard. (SAC 13.)

Plaintiff started a mail log sheet because he was still being denied his mail. (SAC 13.) On April 18, 2017, Plaintiff gave Correctional Officer Xayoudom two letters to be mailed to his family and recorded them on his mail log. (SAC 13.) Plaintiff alleges that Correctional Officers Florse, Marquez, and Xayoudom never mailed any of his correspondence. (SAC 13.) After Plaintiff was moved from Corcoran, his family told him that all the mail they sent to him in prison was returned and they never received mail from him. (SAC 13.) Plaintiff contends that his family really needed his advice during this time because his daughter needed a liver transplant and was in a life and death situation. (SAC 13.)

Around May 15, 2017, Plaintiff was being escorted from the exercise yard by Correctional Officer Gonzalves who told Plaintiff that he knows who he is and that he and Correctional Officer Medina went through his property and read his lawsuits and this was the

reason that Plaintiff was not receiving his mail. (SAC 14.) Correctional Officer Gonzalves also told Plaintiff that he had talked with Plaintiff's son and mother. (SAC 15.)

After talking to Correctional Officer Gonzalves, Plaintiff filed a complaint with IGI/ISU. (SAC 15.) On July 12, 2017, an IGI/ISU officer came and talked to Plaintiff telling him that no investigation had taken place and he had no knowledge of this. (SAC 15.) Plaintiff was told that he needed to file his complaint directly against Correctional Officer Gonzalves for the fake investigation done by Correctional Officer Gonzalves. (SAC 15.)

On or around July 22, 2017, Correctional Officer Xayoudom told Plaintiff that it is an underground practice to send inmate mail to the institutional security unit to be read and investigated and this correspondence is not mailed, but is kept and it could be institutional security who is not giving him his mail or mailing his correspondence to his family. (SAC 14.) Correctional Officer Xayoudom also told Plaintiff that he knew that Plaintiff filed a lot of inmate appeals and lawsuits and inmates who file appeals against staff in administrative segregation do not get their mail. (SAC 14.)

On July 28, 2017, Plaintiff filed a citizen's complaint against Correctional Officer Gonzalves for abuse of power and position and a complaint with internal affairs for the same conduct. (SAC 15.) Plaintiff contends that he and his family were used as a target for retaliation by Corcoran security housing unit officers who have been fired or investigated by the federal courts due to inmate complaints. (SAC 15.)

Plaintiff alleges that when he was placed in administrative segregation on February 6, 2017, he was not provided with an initial classification hearing within ten days, not provided with a 114 D lock-up order until May 27, 2017, in violation of the California Code of Regulations. (SAC 16.) Plaintiff contends that Counselor Bugarin and Chairperson R. Godwin held him in administrative segregation longer than the minimal stay for this kind of incident and other persons would not have been treated in this same manner. (SAC 16.)

Plaintiff states that the new attorney general was being trained at the time of these actions and these are the same claims that have already been litigated once before and he needs an in camera review of the correspondence that the attorney general had with the prison. (SAC 17.)

Plaintiff states that this confidential information from Gerald Lee Miller v. McEwen, no. 11-cv-2333-JLS-WVG, is the correspondence that may have led the defendants to take his property and investigate his family. (SAC 17.)

Plaintiff brings this action against Correctional Officers Navarro, Torress, Cagle, Medina, Florse, Marquez, Xayoudom, Gonzalves, Bugarin, and Goodwin seeking a declaration that his rights were violated, injunctive relief, and monetary damages.

## III.

## DISCUSSION

### A.     Eighth Amendment

Plaintiff alleges that Correctional Officer Navarro subjected him to Cruel and Unusual Punishment by setting him up to be assaulted and failing to stop the assault before it happened. (SAC 20.) The Eighth Amendment's prohibition against cruel and unusual punishment protects convicted prisoners. Bell v. Wolfish, 441 U.S. 520, 535 (1979); Graham v. Connor, 490 U.S. 386, 395 n.10 (1989). Although prison conditions may be restrictive and harsh, prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (quotation marks omitted).

Prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners because being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society. Farmer v. Brennan, 511 U.S. 825, 833-34 (1994) (quotation marks omitted); Cortez v. Skol, 776 F.3d 1046, 1050 (9th Cir. 2015); Clem v. Lomeli, 566 F.3d 1177, 1181 (9th Cir. 2009); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). However, prison officials are liable under the Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to an inmate; and it is well settled that deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm.

Farmer, 511 U.S. at 834, 841 (quotations omitted); Clem, 566 F.3d at 1181; Hearns, 413 F.3d at 1040.

As the Court previously found, the allegation that Correctional Officer Navarro told other inmates that Plaintiff was responsible for the cell search and confiscation of inmate cell phones can be reasonably construed as placing Plaintiff at a substantial risk of harm from other inmates. See Arredondo v. Drager, No. 14-CV-04687-HSG, 2016 WL 3755958, at *12 (N.D. Cal. July 14, 2016) (transferring an inmate to a housing unit known to be for snitches and informants which would subject the inmate to assault from other inmates); Lyons v. Dicus, 663 F. App'x 498, 500 (9th Cir. 2016) (labeling inmate snitch). Further, Plaintiff alleges that Correctional Officer Navarro was the first officer on the scene and failed to intervene to stop the assault. The allegations in the complaint are sufficient to state a cognizable claim against Correctional Officer Navarro for deliberate indifference in violation of the Eighth Amendment.

**B.     Due Process**

Plaintiff alleges that he was denied his right to due process by 1) being deprived of his personal property, 2) being deprived of his personal mail; 3) being placed in an ongoing investigation and 3) the process by which he was placed into and held in administrative segregation.[2] The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake. Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (quotation marks omitted). The Due Process Clause does not confer a liberty interest in freedom from state action taken within a prisoner's imposed sentence. Sandin v. Conner, 515 U.S. 472, 480 (1995). However, a state may "create liberty interests which are protected by the Due Process Clause." Sandin, 515 U.S. at 483-84.

///

///

---

[2] Plaintiff alleges a violation of the Fifth Amendment. "[T]he Fifth Amendment's due process clause applies only to the federal government." Bingue v. Prunchak, 512 F.3d 1169, 1174 (9th Cir. 2008). Since all Defendants in this action are state employees the Fifth Amendment is inapplicable here.

9

A prisoner has a liberty interest protected by the Due Process Clause only where the restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Keenan v. Hall, 83 F.3d 1083, 1088 (9th Cir. 1996) (quoting Sandin, 515 U.S. at 484).

1. Deprivation of Property

Plaintiff alleges that Correctional Officers Torress, Medina, and Cagle violated his right to due process by illegally confiscating his personal property. (SAC 19, 20.) The Due Process Clause is not violated by the random, unauthorized deprivation of property so long as the state provides an adequate post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517, 533 (1984); Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994). In this instance, Plaintiff has alleged an unauthorized deprivation of his personal and legal property, and Plaintiff has an adequate post-deprivation remedy under California law.

Although Plaintiff argues that he has been deprived of an adequate remedy under state law due to the failure to return his inmate appeal at the third level, even if Plaintiff's inmate appeal was not returned that does not deprive him of an adequate remedy under state law. Whether Plaintiff has an adequate state remedy does not depend on administrative grievance process. Claims against a government agency under California law are governed by the Government Claims Act. See Cal. Gov. Code § 810, et seq.

Since Plaintiff has an adequate remedy under state law, he may not pursue a due process claim arising out of the unlawful confiscation of his personal property.[3] Barnett, 31 F.3d at 816-17 (citing Cal. Gov't Code §§ 810-895). Plaintiff fails to state a due process claim based on the loss of his personal property.

2. Administrative Segregation

Plaintiff also alleges that he was placed in administrative segregation without receiving the process required under the Fourteenth Amendment. The Due Process Clause does not create

---

[3] Similarly, Plaintiff contends that the deprivation of his property violated his rights under the Fourth Amendment. "[T]he fourth amendment does not protect an inmate from the seizure and destruction of his property." Taylor v. Knapp, 871 F.2d 803, 806 (9th Cir. 1989); accord K'napp v. Arlitz, 661 F. App'x 468, 470 (9th Cir. 2016) (unpublished); Giba v. Cook, 232 F. Supp. 2d 1171, 1186 (D. Or. 2002).

a liberty interest in remaining in the general population or being free from administrative segregation. Hewitt v. Helms, 459 U.S. 460, 466-67 (1983); Toussaint v. McCarthy, 801 F.2d 1080, 1091 (9th Cir. 1985), abrogated in part on other grounds by Sandin, 515 U.S. 472. Administrative segregation is the type of confinement that should be reasonably anticipated by inmates at some point in their incarceration. Toussaint, 801 F.2d at 1091 (quoting Hewitt, 459 U.S. at 468). However, a state may a create liberty interest which would be protected by the Due Process Clause. Sandin, 515 U.S. at 483-84. A prisoner has a liberty interest protected by the Due Process Clause only where the restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Keenan, 83 F.3d at 1088 (quoting Sandin, 515 U.S. at 484).

The Ninth Circuit has concluded that prisoners have no liberty interest in remaining free from administrative segregation or solitary confinement. See May v. Baldwin, 109 F.3d 557, 565 (9th Cir.1997). Plaintiff alleges that he was not provided the procedure required by 15 C.C.R. §§ 3335 and 3337. (Compl. 14.) However, in Toussaint, the Ninth Circuit held that California's prison regulations which govern the removal and segregation decision, do not create a liberty interest. Toussaint, 801 F.2d at 1097-98. Such regulations are procedural requirements that, even if mandatory, do not raise a constitutionally cognizable liberty interest. Id. at 1098.

Plaintiff alleges that due to the retaliatory conduct he was subjected to he was denied his mail and the right to communicate by phone for six months. (SAC at 17.) However, Plaintiff's complaint does not contain any factual allegations to demonstrate that the conditions he was subjected to while he was housed in administrative segregation imposed an atypical or significant hardship on him in relation to the ordinary incidents of prison life. Plaintiff's complaint fails to demonstrate that he had a liberty interest in freedom from administrative segregation, and therefore, he cannot state state a due process claim based on his placement in administrative segregation.

3. Denial of Mail

Plaintiff alleges that Correctional Officers Florse, Marquez, and Medina denied him of mail for six months while he was housed in administrative segregation in violation of the Due

Process Clause. An inmate has a right under the First Amendment to send and receive mail. Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995). There is also a liberty interest in communication by mail that is protected by the Due Process Clause. Procunier v. Martinez, 416 U.S. 396, 418 (1974), overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401 (1989)). While an inmate has a due process liberty interest in receiving notice that his mail is being withheld, Prison Legal News v. Lehman, 397 F.3d 692, 701 (9th Cir. 2005); Sorrels v. McKee, 290 F.3d 965, 971 (9th Cir. 2002), only where the failure to notify is pursuant to prison policy would a due process claim arise, Sorrels, 290 F.3d at 972.

First, Plaintiff alleges that he asked Correctional Officer Marquez about letters that Plaintiff gave him to mail out because he had not a response from his family. Plaintiff accused Correctional Officer Marquez of withholding his mail and stated that he was going to file a grievance against him. Correctional Officer Marquez responded for Plaintiff to go ahead and file a grievance because he was still not going to get his mail. The following day, Plaintiff gave Correctional Officer Florse some letters to be mailed. Plaintiff complained that he thought Correctional Officer Marquez was withholding his mail and Correctional Officer Florse responded that it was not his problem and walked away.

Plaintiff gave Correctional Officer Xayoudom some letters to be mailed to his family. Sometime later Correctional Officer Xayoudom told Plaintiff that letters are sent to Institutional Security to be read and investigated and it could be Institutional Security that was keeping his mail. Plaintiff contends that this "underground policy" violates his due process rights. However, prison officials may examine a prisoner's mail without infringing upon his constitutional rights. United States v. Wilson, 447 F.2d 1, 8 n.4 (9th Cir. 1971).

Although Plaintiff had been told by Correctional Officer Gonzalves that his family was being investigated and that was why he was not getting mail, in response to an inmate complaint, Institutional Security told him that they were not investigating him and his family and were not withholding his mail. Plaintiff alleges that letters sent to his family were returned, but does not link any named defendant to his mail being returned. Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones, 297 F.3d at 934.

1 Plaintiff alleges no facts by which the Court can reasonably infer that Correctional Officers Marquez, Florse, Xayoudom, or Gonzalves were denying Plaintiff of his right to send or receive mail due to a prison policy. Plaintiff has failed to state a cognizable due process claim based upon the denial of his mail.

### 4. Ongoing Investigation

Plaintiff alleges that Defendant Gonzalves violated his rights under the Fourteenth Amendment by placing Plaintiff under an ongoing investigation. The guarantees of the Fourteenth Amendment only apply when a constitutionally protected liberty or property interest is at stake. See Ingraham v. Wright, 430 U.S. 651, 672 (1977) ("Due process is required only when a decision of the State implicates an interest within the protection of the Fourteenth Amendment"); Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 569 (1972) (same); Erickson v. U.S. ex rel. Dep't of Health & Human Servs., 67 F.3d 858, 861 (9th Cir. 1995) ("A due process claim is cognizable only if there is a recognized liberty or property interest at stake.").

While Plaintiff alleges that Defendant Gonzalves placed him under an ongoing investigation and this caused others to withhold his mail or subject him to other treatment, Plaintiff has failed to link any investigation by Defendant Gonzalves to the deprivation of a liberty or property interest possessed by Plaintiff. Plaintiff's conclusory allegation that he was deprived of mail or any other protected interest due to the ongoing investigation of Defendant Gonzalves is insufficient to state a plausible claim for violation of the Due Process Clause. Plaintiff has failed to state a due process claim against Defendant Gonzalves.

### D. Retaliation

Plaintiff alleges that the acts of the named defendants were in retaliation for his submitting grievances and filing lawsuits. Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). Also protected by the First Amendment is the right to pursue civil rights litigation in federal court without retaliation. Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011).

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

### 1. Correctional Officer Navarro

Plaintiff alleges that Correctional Officer Navarro set him up to be assaulted due to his filing of a prior civil action and because he believed that Plaintiff was working for the attorney general. Plaintiff's allegation that Correctional Officer Navarro made statements that Plaintiff filed lawsuits and was working for the Attorney General at the time that he told another inmate that Plaintiff was responsible for a cell search and confiscation of inmate's phones is sufficient to state a cognizable claim for retaliation. Plaintiff has stated a cognizable retaliation claim against Correctional Officer Navarro.

### 2. Correctional Officers Torress and Cagle

Plaintiff alleges that Correctional Officers Torress and Cagle packed his personal property and failed to sign and date the property inventory sheet when he was sent to administrative segregation. Plaintiff contends that this was done because he was involved in prior civil litigation and that they believed that he was working for the Attorney General. However, Plaintiff fails to allege facts sufficient for the Court to reasonably infer that Correctional Officers Torress and Cagle had knowledge of his prior civil litigation or believed that he was working for the Attorney General.

Plaintiff attempts to impute knowledge to these defendants based on statements made by Correctional Officer Navarro. But the statements made by Correctional Officer Navarro do not demonstrate knowledge or intent to Correctional Officers Torress and Cagle. To state a cognizable retaliation claim, Plaintiff must establish a nexus between the retaliatory act and the protected activity. Grenning v. Klemme, 34 F.Supp.3d 1144, 1153 (E.D. Wash. 2014). Plaintiff attempts to link the officers by alleging that Navarro and Cagle worked together from 2013 to 2015 where Plaintiff was previously housed. But this too is insufficient for the Court to

reasonably infer that Correctional Officers Torress or Cagle destroyed Plaintiff's property because of his litigation conduct. Iqbal, 556 U.S. at 678-79. Plaintiff fails to state a plausible claim for retaliation against Correctional Officers Torress and Cagle.

### 3. Correctional Officer Medina

Plaintiff alleges that after he was placed in administrative segregation, Correctional Officer Medina issued him his property and gave him the unsigned property inventory sheet. The fact that he was told by Correctional Officer Medina that he did not have any other property cannot reasonably be construed as adverse action. Plaintiff fails to include any factual allegations that Correctional Officer Medina took adverse action against him.

While Plaintiff alleges that five months later, Correctional Officer Gonzalves told him that he and Correctional Officer Medina went through his property and read his lawsuits, this does not demonstrate that Correctional Officer Medina took any adverse action against Plaintiff because of his protected conduct. Grenning, 34 F.Supp.3d at 1153. Although Plaintiff alleges that his personal property was given to other inmates in retaliation for his prior civil suit such conclusory allegations are insufficient for the Court to reasonably infer that any named defendant took his property in retaliation for his protected conduct. Iqbal, 556 U.S. at 678-79. Plaintiff has failed to state a plausible claim for retaliation against Correctional Officer Medina.

### 4. Correctional Officers Florse, Marquez, and Xayoudom

Plaintiff alleges that Correctional Officers Florse and Marquez retaliated against him by failing to mail his letters. Further, Plaintiff alleges that after he filed a grievance against Correctional Officer Florse, Officer Florse would beat on his cell every thirty minutes to an hour and would try to provoke him by pulling on him. Plaintiff's allegations that he did not receive any mail after Correctional Officers Florse and Marquez told him they knew who he was and that inmates who filed grievances and lawsuits did not get mail in administrative segregation, and that Officer Florse would harass him after an inmate grievance was filed are sufficient to state cognizable retaliation claim against Correctional Officers Florse and Marquez.[4]

---

[4] Although Plaintiff alleges that the correctional officers withheld his incoming mail, the complaint alleges that all of their mail was returned to them which would indicate, not that Correctional Officers

Plaintiff also alleges that Plaintiff alleges that he gave Correctional Officer Xayoudom some letters to be mailed to his family on April 18, 2017 and they were never received. In July 2017 Correctional Officer Xayoudom told Plaintiff that the mail was sent to the Institutional Security Unit to be read or investigated and that might be the reason that his mail was being delayed. Further, at the time, Plaintiff contends that Correctional Officer Xayoudom told Plaintiff he knew that Plaintiff was filing a lot of inmate appeals and a lawsuit and that inmates who filed appeals against staff do not get mail in administrative segregation. This is sufficient to state a plausible claim that Correctional Officer Xayoudom interfered with Plaintiff's mail due to his protected activity.

### 6. Correctional Officer Gonzalves

Even assuming that an investigation into possible criminal activity could be construed as adverse action, the allegations in the second amended complaint are insufficient for the Court to reasonably infer that Correctional Officer Gonzalves was investigating Plaintiff or his family. Plaintiff alleges that Correctional Officer Gonzalves stated that he knew Plaintiff and his family were being investigated by IGI/ISU and that Correctional Officer Gonzalves had spoken to Plaintiff's son and mother. Plaintiff was subsequently told that IGI/ISU was not investigating him and he alleges that Correctional Officer Gonzalves conducted a fake investigation. The bare fact that Correctional Officer Gonzalves said that he spoke to Plaintiff's son and mother is insufficient to demonstrate that he was conducting an investigation.

While Plaintiff eventually submitted complaints against Correctional Officer Gonzalves for allegedly conducting a fake investigation, the statement that Correctional Officer Gonzalves had spoken with Plaintiff's family was made prior to Plaintiff filing a complaint against Correctional Officer Gonzalves. Plaintiff has failed to state a plausible claim that Correctional Officer Gonzalves took adverse action against him because of his protected conduct. Plaintiff has failed to state a retaliation claim against Correctional Officer Gonzalves.

---

Florse and Marquez were holding Plaintiff's mail, but that is was rejected by the prison mailroom. However, it can reasonably be inferred that the mail was rejected due to an incorrect address and that by failing to mail the letters Plaintiff was sending to his family they did not receive notification of his change of address due to being placed in administrative segregation.

1. 7. <u>Counselor Bugarin and Chairperson Godwin</u>

Plaintiff only asserts conclusory allegations of retaliatory conduct that are insufficient to state a retaliation claim against Counselor Bugarin and Chairperson Godwin. Although Plaintiff alleges that the defendants deliberately failed to bring him before the classification committee in a timely manner and illegally held him in administrative segregation, the complaint is devoid of any allegations that Counselor Bugarin and Chairperson Godwin acted because of Plaintiff's protected activity. Plaintiff has failed to state a cognizable claim against Counselor Bugarin and Chairperson Godwin.

**E.     Equitable Relief**

1. <u>Declaratory Relief</u>

In addition to monetary damages, Plaintiff seeks declaratory relief. " 'A case or controversy exists justifying declaratory relief only when the challenged government activity is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties.' " <u>Feldman v. Bomar</u>, 518 F.3d 637, 642 (9th Cir. 2008) (quoting <u>Headwaters, Inc. v. Bureau of Land Management, Medford Dist.</u>, 893 F.2d 1012, 1015 (9th Cir. 1989) (internal quotations and citation omitted)). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." <u>U.S. v. State of Wash.</u>, 759 F.2d 1353, 1357 (9th Cir. 1985) (citations omitted). The conduct at issue in this action occurred in 2017 while Plaintiff was housed at Corcoran, and Plaintiff's remedy is damages should he prevail on his claim that his constitutional rights were violated. The Court recommends that Plaintiff's request for declaratory relief be dismissed.

2. <u>Injunctive Relief</u>

Plaintiff also seeks an order to remove all negative correspondence from the attorney general and the prison during the time he was litigating his prior lawsuit; send Plaintiff to a lower level prison where he would not have enemy concerns, for defendants not to be allowed to talk about this case on Facebook or the Internet; and for his mail rights to be restored.

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983) (citations omitted); Jones v. City of Los Angeles, 444 F.3d 1118, 1126 (9th Cir. 2006). "Abstract injury is not enough." Lyons, 461 U.S. at 101. "[P]laintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." Id. (internal quotations and citations omitted). "The key issue is whether the plaintiff is 'likely to suffer future injury.'" Jones, 444 F.3d at 1126 (quoting Lyons, 461 U.S. at 105). Furthermore, any award of equitable relief is governed by the Prison Litigation Reform Act, which provides in relevant part, "Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A).

Plaintiff seeks relief, such as removing all negative correspondence from his file, precluding the defendants from posting information on social media, or transfer to a lower level prison, that would not remedy the conduct alleged in the second amended complaint and cannot be granted in this action. Further, Plaintiff's subsequent transfer out of Corcoran rendered moot his prayer for injunctive relief regarding the restoration of his mail rights. See Preiser v. Newkirk, 422 U.S. 395, 402-03 (1975); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991). Plaintiff's request for injunctive relief should be dismissed as not cognizable in this action.

**F.     Joinder**

Finally, the Court finds that Plaintiff is attempting to bring claims in this action that are improperly joined. A basic lawsuit is a single claim against a single defendant. Federal Rule of Civil Procedure 18(a) allows a plaintiff to add multiple claims to the lawsuit when they are against the same defendant. Federal Rule of Civil Procedure 20(a)(2) allows a plaintiff to join

multiple defendants to a lawsuit where the right to relief arises out of the same "transaction, occurrence, or series of transactions" and "any question of law or fact common to all defendants will arise in the action." However, unrelated claims that involve different defendants must be brought in separate lawsuits. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). This rule is not only intended to avoid confusion that arises out of bloated lawsuits, but also to ensure that prisoners pay the required filing fees for their lawsuits and prevent prisoners from circumventing the three strikes rule under the Prison Litigation Reform Act. 28 U.S.C. § 1915(g).

The claims brought in this action would result in the type of bloated lawsuit that was precluded in George. Under the federal rules, Plaintiff may state a single claim against a single defendant. Plaintiff may then add any additional claims to his action that are against the same defendant under Rule 18. Fed. R. Civ. P. 18. Plaintiff may also add any additional claims against other defendants if those claims arise from the same transaction, occurrence, or series of transactions as his original claim. Fed. R. Civ. P. 20(a)(2).

Here, Plaintiff alleges that Correctional Officer Navarro made comments about him to other inmates that resulted in him being attacked because he had filed a lawsuit and grievances. However, Plaintiff's claims regarding the handling of his property or mail even if in retaliation by other correctional officers, and subsequent placement and retention in administrative segregation do not arise out of the same transaction or occurrence and do not contain questions of law or fact that are common to the other retaliation claims brought in this action. The fact that Plaintiff alleges that prison officials retaliated against him for filing lawsuits or grievances does not make the claims in this action properly joined. The Court finds that the claims are improperly joined and cannot proceed in the same lawsuit.

**IV.**

**CONCLUSION**

For the reasons explained in this order, it is HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's claim against Correctional Officers Florse, Marquez, and Xayoudom for retaliation in violation of the First Amendment

///

19

2. Plaintiff's claim against Correctional Officer Navarro for deliberate indifference in violation of the Eighth Amendment and retaliation in violation of the First Amendment be dismissed, without prejudice, as improperly joined;

3. Plaintiff's claim for declaratory relief be dismissed, and his claim for injunctive relief dismissed as not cognizable in this action; and

4. All other claims and defendants be dismissed for the failure to state a claim upon which relief may be granted.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provision of 28 U.S.C. §636 (b)(1)(B). Within fourteen (14) days after being served with these Finding and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.2d F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **April 10, 2018**

UNITED STATES MAGISTRATE JUDGE